JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his conviction by a jury for aggravated murder in violation of R.C. 2903.01[1] and having a weapon under disability in violation of R.C. 2923.13.
 {¶ 2} In the early morning hours of May 22, 2003, East Cleveland police responded to a radio dispatch about a possible gunshot victim at Whatley's Lounge on Euclid Avenue, Cleveland, Ohio. At the scene, police found Timothy Austin's lifeless body on the sidewalk outside the bar. Austin had been shot several times.
 {¶ 3} Nikia Beal was with Austin at Whatley's just before he was killed. Joseph Fussell was also at Whatley's the night of Austin's murder. Both Beal and Fussell identified defendant as Austin's assailant.
 {¶ 4} A police investigation led to defendant's arrest and indictment for Austin's murder. After his conviction, defendant filed this appeal in which he presents the following assignments of error:
I. Christopher Tucker was denied effective Assistance of Counsel.
 {¶ 5} Defendant argues that his trial counsel was ineffective because he did not file a motion to suppress Beal's identification testimony at trial.
 {¶ 6} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Hartman (2001), 93 Ohio St.3d 274,754 N.E.2d 1150; Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 7} In the case at bar, defendant claims that his counsel was ineffective because he failed to file a motion to suppress the identification testimony offered by Beal during trial. Defendant claims that the identification procedure used by the police department was unreliable and highly suggestive because the police showed Beal only his photograph instead of having her identify him from the typical photo array containing photos of other persons.
 {¶ 8} "When a witness has been confronted with a suspect prior to trial, due process requires a trial court to suppress identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances."State v. Williams, (October 19, 1995), Cuyahoga App. No. 67970, 1995 Ohio App. LEXIS 4605, at *8.
 {¶ 9} The critical inquiry is whether under the totality of the circumstances, the eyewitness identification was reliable even though the procedure may have been somewhat suggestive. [Citation omitted.] Factors which should be considered in determining the reliability of eyewitness identification include:
(1) The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these facts is to be weighed the corrupting effect of the suggestive identification itself.
 {¶ 10} Id., citing Neil v. Biggers (1972), 409 U.S. 188,199-200, 93 S. Ct. 375, 34 L.Ed.2d 401.
 {¶ 11} Similarly, an impermissibly suggestive photographic identification procedure may still be reliable "if other factors are present which demonstrate sufficient aspects of reliability." Id.
 {¶ 12} In the case at bar, Beal told police that defendant was inside Whatley's when she and Austin arrived. She stated that before Austin was shot she had ample opportunity to see defendant because he had been staring at her. She stated that when she and Austin left the bar and walked outside, she heard gunshots and then saw Austin fall to the ground. She described the events that followed:
 {¶ 13} Q: Well, when Tim hit the ground, I heard him call him a whole ass nigger.
 {¶ 14} * * *
 {¶ 15} Q: This is as Tim hit the ground or after he hit the ground?
 {¶ 16} A: After he hit the ground.
 {¶ 17} Q: And then he walked away, the defendant walked away?
 {¶ 18} A: No, he walked away after he ran out of bullets.
 {¶ 19} Tr. 201-202. Beal stated she was looking at the defendant while he was shooting Austin.
 {¶ 20} She admitted that she did not go to the police because she was afraid for herself. She testified:
 {¶ 21} Where I live people get killed and people don't find who did the killings and I didn't want no one to come after me, so I didn't say anything at all.
 {¶ 22} Tr. 192. Almost one month after the killing, Beal spoke with police about the shooting. Beal testified that police showed her only one photograph of defendant. Defendant claims this procedure was impermissibly suggestive. Defendant, however, does not consider what Beal told police before she was shown defendant's photograph:
 {¶ 23}
Q: Now, Nikia when you went to the police department, you already knew the name of the man that you knew killed Timothy Austin, correct?
 {¶ 24} A: Yes, I did.
 {¶ 25} Q: And you told the police who it was that killed Timothy Austin, did you not?
 {¶ 26} A: Yes, I did.
 {¶ 27} Q: And did they in fact show you a photograph of that man to confirm who you were talking about?
 {¶ 28} A: Yes.
 {¶ 29} Tr. 198-199.
 {¶ 30} The witness had a good long look at defendant before and during the crime. Afterwards, during a ride home, the driver, one of Austin's friends, told her the shooter's name. She then matched defendant's name with a photograph of him posted on the internet. Under the totality of the circumstances, Beal's identification of defendant was sufficiently reliable to be deemed admissible by the trial court and defendant's trial counsel would not have been obliged to try to suppress that testimony. We conclude, therefore, that defendant was not deprived of effective assistance of trial counsel. Defendant's first assignment of error is overruled.
 {¶ 31} The court erred in repeatedly allowing important and damaging hearsay testimony into the trial.
 {¶ 32} Defendant argues that the trial court erred in allowing four separate instances of hearsay testimony during the state's case-in-chief. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Moreover, "[a]n `assertion' for hearsay purposes simply means to say that something is so, e.g., that an event happened or that a condition existed." State v. Lamar
(2002), 95 Ohio St.3d 181, 196-197.
 {¶ 33} The first instance of inadmissible hearsay defendant claims prejudiced him involves Beal and what she told Hall as he drove her home after the shooting. Beal testified as follows:
 {¶ 34} Q: How did you get home then?
 {¶ 35} A: Mayshun brought me home that night.
 {¶ 36} * * *
 {¶ 37} Q: Did he question you as to what happened?
 {¶ 38} A: He asked me — first he was on his cell phone really the whole time he was taking me home, then he'd get off of it and he'd get off of it and say you got to tell me what happened but I couldn't tell him anything. I was just shaking and crying.
 {¶ 39} Q: Did he ask you about anyone in particular at the bar?
 {¶ 40} * * *
 {¶ 41} A: He did say was it that light-skinned dude and I just didn't say nothing at all.
 {¶ 42} Q: And when he said the light-skinned dude, did you know who he was referring to?
 {¶ 43} * * *
 {¶ 44} A: To the defendant.
 {¶ 45} Tr. 192-193.
 {¶ 46} Defendant says that this testimony is the most damaging to him because it "suggests that [he] is the likely shooter * * *." Brief at p. 14. We disagree. Beal's statement about what Hall asked her is not hearsay; it is a question. By definition, a question cannot be offered for the truth of any matter because "a true question or inquiry is by its nature incapable of being proved either true or false," and therefore "it cannot be hearsay within the meaning of Evid.R. 801."Lamar, supra.
 {¶ 47} Next, defendant claims the testimony of Detective Marche, one of the police officers investigating Austin's murder, included inadmissible hearsay. Marche testified about his interview with Joseph Fussell, who was at Whatley's when Austin was killed. Marche testified that when he first met with Fussell "[h]e said that he knew the male because he went to high school with him." Tr. 347. Marche also stated that Fussell told him defendant "was with several other people that night." Tr. 355.
 {¶ 48} Defendant's fourth claim of inadmissible hearsay is Marche's testimony about his interview with Lehandro Hill. Marche stated that "Lehendro Hill said that when he left the bar — * * * Chris Tucker was already outside walking to his vehicle." Tr. 72. We agree that the complained of testimony constitutes hearsay. However, the erroneous admission of hearsay evidence is harmless "so long as there was substantial other evidence to support the guilty verdict." State v. Collymore, Cuyahoga App. No. 81594, 2003-Ohio-3328, at ¶ 30, citing State v. Griffin (2001),142 Ohio App.3d 65, 79, 753 N.E.2d 967 (citations omitted).
 {¶ 49} In the case at bar, Fussell, as well as Beal, provided that evidence when he testified, before Marche appeared as a witness. On direct examination, Fussell stated he was at Whatley's before Austin was killed, and saw the crime from across the street:
 {¶ 50} Q: And, Mr. Fussell, do you know in this case, you know the defendant Mr. Tucker?
 {¶ 51} A: I went to school with him.
 {¶ 52} * * *
 {¶ 53} Q: Did you see the defendant in the bar that night?
 {¶ 54} A: Yes.
 {¶ 55} Tr. 238, 244. Fussell stated that at one point, he left the bar to buy a cigar at a gas station across the street. His testimony about the events that transpired follows:
 {¶ 56} Q: What if anything unusual did you see happen at that point in time?
 {¶ 57} * * *
 {¶ 58} A: I seen him shooting, gunshots, gun smoke, like a few people in the street, a few people on the sidewalk.
 {¶ 59} Q: And where was that in front of?
 {¶ 60} A: Whatley's
 {¶ 61} Q: All right. And who did you see get shot?
 {¶ 62} A: Tim.
 {¶ 63} Q: All right. And did you see who shot Tim?
 {¶ 64} A: Yeah.
 {¶ 65} Q: Who shot him?
 {¶ 66} A: Chris.
 {¶ 67} * * *
 {¶ 68} Q: Now, when you crossed the street, you came over to see him, was the defendant still there?
 {¶ 69} A: No.
 {¶ 70} Q: Where was he at?
 {¶ 71} A: He had left.
 {¶ 72} Q: Did you see him leave after he got done shooting?
 {¶ 73} A: Yes.
 {¶ 74} Q: Where did you see him go?
 {¶ 75} A: He walked to his car.
 {¶ 76} Tr. 251, 256.
 {¶ 77} On the record before this court, there is substantial other evidence to support the guilty verdict. Both Beal and Fussell were eyewitnesses to Austin's murder. They both saw defendant shoot and kill Austin. They both confirm that after shooting Austin defendant walked to a blue Cutlass and drove it away.
 {¶ 78} Finally, defendant also objects to the admission of Marche's statement that Fussell told him he knew the shooter because he went to high school with him. "[W]here a declarant is examined on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless." State v. Tomlinson (1986),33 Ohio App.3d 278, 281, 515 N.E.2d 963, citing State v. Harris, (Mar. 2, 1984), Cuyahoga App. No. 47094. In the record before this court, we observe that Fussell was examined at length about what he told police and find Fussell's testimony consistent with what Marche described. Admitting Marche's testimony on what he was told was harmless error.
 {¶ 79} Under this objection, defendant also complains about Marche's recounting of his interview with Hill in which Hill said defendant was outside the bar when the shooting occurred. In court, Hill, recanting what he told Marche, testified that defendant was inside the bar when the shooting took place. We thus find harmless error to allow the jury to hear Marche's statements, because during cross-examination Hill admitted making the different earlier statement. Moreover, there was other overwhelming evidence that defendant was outside the bar and that he was the one who shot Austin, so there was substantial other evidence to support defendant's guilt.
 {¶ 80} None of Marche's hearsay statements amounts to any prejudice to defendant. Accordingly, defendant's second assignment of error is overruled.
 {¶ 81} Christopher Tucker was denied a fair trial due to prosecutorial misconduct.
 {¶ 82} In his third assignment of error, defendant claims that the prosecutor committed misconduct by allowing Marche "to inform the jury that defendant had recently been in prison[2] and that he had a violent past." Appellant's Brief at p. 15.
 {¶ 83} In order to decide the merits of this claim, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected substantial rights.State v. LaMar (2001), 95 Ohio St.3d 181, 767 N.E.2d 166 citingState v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883. Upon appellate review, the focus of the analysis "is the fairness of the trial, not the culpability of the prosecutor." LaMar, supra citing Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 71 L.Ed.2d 78. If it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments, we will not conclude that a trial was unfair. LaMar, supra; State v. Treesh (2001),90 Ohio St.3d 460, 464, 739 N.E.2d 749.
 {¶ 84} Defendant argues that when Shavonne Smith, defendant's girlfriend, opined that defendant did not have a reputation for violence, the prosecutor made improper comments about his violent character. The prosecutor asked Smith whether she was aware that defendant had previously been charged with carjacking and that a gun was used. Defendant's objection was sustained by the trial court.
 {¶ 85} Evid. R. 405(A), provides:
 {¶ 86} In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 87} In State v. Sims (1981), 3 Ohio App.3d 321,445 N.E.2d 235, this court addressed a situation similar to the one in the case at bar. In Sims, a defense witness testified the defendant was a non-violent person. On cross-examination, the prosecutor introduced evidence of the defendant's prior arrests for felonious assault and aggravated robbery. This court explained why the prosecutor's comments were not improper:
 {¶ 88} The state did not refer to the appellant's prior arrest to impeach his testimony. The evidence of prior arrests was offered to impeach Mr. King's testimony that the appellant had a reputation for nonviolence. This line of inquiry is proper under the fact that the appellant had been arrested for aggravated robbery and felonious assault would necessarily affect his reputation for nonviolence. These instances of misconduct were therefore relevant to the testimony of the character witness, and were admissible to impeach his statement that the appellant had a reputation for non-violence. This result would have been reached even prior to the enactment of the Rules of Evidence, under the authority of State v. Elliott (1971),25 Ohio St.2d 249 [54 O.O.2d 371], in which the Ohio Supreme Court held:
 {¶ 89} "A character witness may be cross-examined as to the existence of reports of particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness — not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given his testimony. Such inconsistent testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound." (Paragraph two of syllabus.)
 {¶ 90} In the case at bar, following Sims, we conclude that the prosecutor's comments were not improper.
 {¶ 91} Defendant further argues he was denied a fair trial because the state withheld exculpatory evidence he argues violates Brady v. Maryland, 373 U.S. 83, 10 L.Ed.2d 215,83 S.Ct. 1194 (1963). To establish a claim under Brady, a defendant must establish the following facts:
(1) the prosecutor suppressed evidence; (2) such evidence was favorable to the defense; and (3) the suppressed evidence was material. Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000) (citing Moore v. Illinois, 408 U.S. 786, 794-95,33 L.Ed.2d 706, 92 S.Ct. 2562 (1972)). "The inquiry is objective, independent of the intent of the prosecutors." Id. (citingBrady, 373 U.S. at 87.) "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome of the proceeding."United States v. Bagley, 473 U.S. 667, 676, 87 L.Ed.2d 481,105 S.Ct. 3375 (1985). Furthermore, there is no Brady violation "where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available * * * from another source, because in such cases there is really nothing for the government to disclose." Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998), cert. denied, 528 U.S. 842, 145 L.Ed.2d 93, 120 S. Ct. 110 (1999) (citation and internal quotation marks omitted).
 {¶ 92} Bonnell v. Mitchel, (N.D. Ohio 2004),301 F.Supp.2d 698, 726.
 {¶ 93} "The state's `omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.'" State v. Brown,
Cuyahoga App. No. 80553, 2002-Ohio-3635, at ¶ 67, citing UnitedStates v. Agurs, 427 U.S. 97, 112-13, 49 L.Ed.2d 342,96 S.Ct. 2392 (1975).
 {¶ 94} According to defendant in the case at bar, police had information they did not investigate or divulge about "potential suspects, theories and automobiles * * *." Defendant points to the following exchange as proof that the state had exculpatory evidence it failed to turn over to him:
 {¶ 95} Q: Officer, the prosecutor asked you a question which is kind of a legal question but he asked you this question. If there's exculpatory information in their investigation or in their files they are required to turn it over to me, correct?
 {¶ 96} A: Yes.
 {¶ 97} Q: What does Ernestine Hamilton say in your notes?
 {¶ 98} A: Ernestine Hamilton states that she heard four gunshots and her neighbor who remains to be confidential states she saw a white four door vehicle on Elberon pull off squealing tires.
 {¶ 99} Q: Did you investigate a white four door vehicle?
 {¶ 100} A: No.
 {¶ 101} Q: Do you know if that information was turned over to me?
 {¶ 102} A; No, I don't sir.
 {¶ 103} Q: There's also a note about somebody who didn't give their name, correct —
 {¶ 104} A: Correct.
 {¶ 105} Q: — who gave information to the police —
 {¶ 106} A: Correct.
 {¶ 107} Q: — that is, as with Ernestine Hamilton, inconsistent with Christopher Tucker's guilt, correct?
 {¶ 108} A: Yes.
 {¶ 109} Q: So there are four people here that give information that is inconsistent with the — well, there's five. There is a black Chevy vehicle mentioned that's inconsistent, right?
 {¶ 110} A: Correct.
 {¶ 111} Q: So there are at least five people that gave information to the police department that's inconsistent with the guilt of Christopher Tucker, correct.
 {¶ 112} A: There is.
 {¶ 113} Tr. 425-427.
 {¶ 114} On redirect examination, however, Marche explained there was only one person and her account was not inconsistent.
 {¶ 115} Q: Detective Marche.
 {¶ 116} A: Yes.
 {¶ 117} Q: Mr. Sullivan just asked you about what Ernestine Hamilton said on this area canvass. What is it she said?
 {¶ 118} A: States she heard four gunshots and her neighbor who remains to be confidential stated she saw a white four door vehicle on Elberon Road pull off squealing tires.
 {¶ 119} Q: What Ernestine Hamilton said, that's not inconsistent with what we found.
 {¶ 120} A: Correct.
 {¶ 121} Q: And what her anonymous neighbor said, all she said is that a white car pulled off and squealed its tires.
 {¶ 122} A: That's correct.
 {¶ 123} Q: She didn't say she saw someone else shoot Timothy Austin, did she?
 {¶ 124} A: No.
 {¶ 125} Q: She didn't say she saw whoever shot Timothy Austin get in his white car and squeal its tires and pull off, did she?
 {¶ 126} A: No.
 {¶ 127} Q: All she said was some white car, who knows who it was, patron of the bar, somebody who was walking down the street, somebody hopped in this white car and squealed its tires and pulled off at or about the time of the shooting.
 {¶ 128} A: That's correct.
 {¶ 129} Q: Okay. So in terms of — and this is stared [sic] as the unknown neighbor and then the witness on the next page is double stared [sic] so we're talking about this person. The person that Ernestine Hamilton is talking about with her anonymous neighbor is the person on page two of this, is that correct?
 {¶ 130} A: Yes, sir.
 {¶ 131} Q: So it's the same thing. So in terms of inconsistencies between what these witnesses saw and how your case turned out, there's no inconsistencies, are there?
 {¶ 132} A: No, there aren't.
 {¶ 133} Q: And there's only one mention here, not five as Mr. Sullivan portrayed, of this one car.
 {¶ 134} A: That's correct.
 {¶ 135} Tr. 428-430.
 {¶ 136} Defendant does not indicate what it is about this information that is exculpatory, material, or favorable to him. Information acquired about a crime during an investigation is not necessarily exculpatory. Though the prosecution is responsible for disclosing all favorable evidence known to it as well as to those acting on its behalf, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795, 33 L.Ed.2d 706,92 S.Ct. 2562 (1972) (Determining that the witness withheld by the prosecution was merely an early lead that the police abandoned when eyewitnesses were found). United States v. Mullins, (6th Cir. 1994), 22 F.3d 1365, 1372; See also Arizona v. Youngblood,488 U.S. at 55.
 {¶ 137} In the case at bar, the evidence defendant argues should have been turned over to him amounts to information gathered as part of its investigation into Austin's murder. Defendant has not shown that this information would have been exculpatory or material in light of Beal and Fussell's eyewitness testimony. Defendant has failed to show, therefore, that there is a reasonable probability that, had this evidence been disclosed to the defense, the result of the proceeding would have been different. Accordingly, defendant's third assignment of error is without merit.
 {¶ 138} Appellant Christopher Tucker's convictions for aggravated murder and having a weapon while under disability was based on insufficient evidence and against the manifest weight of the evidence.
 {¶ 139} Defendant argues that his convictions for aggravated murder and having a weapon while under disability were based on insufficient evidence and against the manifest weight of the evidence.
 {¶ 140} When a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 141} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2D 541, 545-546. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., citing Tibbs v. Florida, (1982) 457 U.S. 31, at 42. In a challenge to the manifest weight of the evidence, a court reviews the record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflict in the evidence, the jury clearly lost its way * * *." Thompkins, 387.
 {¶ 142} In the case at bar, defendant was convicted of aggravated murder, which required the state to prove that he "purposely, and with prior calculation and design, cause[d] the death of [Austin]."[3] The state also had to prove that defendant murdered Austin with a "firearm or other dangerous ordnance."[4] Defendant argues that the state did not meet its burden of proving either offense beyond a reasonable doubt.
 {¶ 143} Two witnesses identified defendant as the person who killed the victim. Beal testified she knew defendant was the person who shot Austin. She testified defendant had been staring at her inside the bar earlier that evening. She also stated that she had a good look at defendant's face as he shot Austin and then walked to get into a blue Cutlass, which defendant later admitted he was driving that night.
 {¶ 144} Fussell testified he knew defendant from high school. Fussell was certain it was defendant that shot and killed Austin. Fussell also saw defendant walk to a blue Cutlass immediately after.
 {¶ 145} After Austin's murder, Detective Marche spoke with defendant and took a written statement. In that statement, defendant admitted knowing Austin since 1993. Defendant told Marche that Austin carjacked him in 1995 and that he never apologized. Thus a motive was established.
 {¶ 146} According to defendant, Beal was not a reliable witness because "[h]er testimony is tainted by the passage of time, the nature of her identification, her own consumption of alcohol, the dark of the evening and the rapid and chaotic events." Tr. 19.
 {¶ 147} On the other hand, Beal explained why she waited almost a month to speak with police: she was afraid for her own safety. We have already determined that her identification of defendant as Austin's killer was reliable. There is no evidence, moreover, that Beal was ever legally intoxicated or otherwise impaired, although Beal admitted she had been drinking alcohol before Austin was shot. Contrary to defendant's criticism of her testimony, there is no evidence that the lighting conditions or the chaotic nature of the events prevented her from seeing Austin's killer.
 {¶ 148} Next, defendant says Fussell's testimony that only Tucker and Austin were in front of the bar conflicts with Beal's testimony. We disagree. Fussell never said he saw only defendant and Austin. He said he saw "a few people in the street, a few people on the sidewalk." Fussell stated that by the time he looked towards the bar, there were some people, but he was not asked whether they were in front of the bar or elsewhere. Beal testified that she did not notice anyone outside of Whatley's
when she and Austin left the bar. After she heard the first gunshots, she hit the ground. Presumably, she might not have been paying attention to whether there were people in the street or on the sidewalk across the street. We do not find any inconsistency between Beal and Fussell about what occurred outside the bar as Austin was being gunned down.
 {¶ 149} From the record before this court, we conclude that the state proved beyond a reasonable doubt that defendant purposely, and with prior calculation and design, caused Austin's death with a firearm. Moreover, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way. Defendant's convictions are not against the manifest weight of the evidence. Accordingly, we overrule defendant's fourth assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Celebrezze, Jr., J., Concurs.
[1] Defendant's conviction also carries a firearm specification in violation of R.C. 2941.145.
[2] We do not address the comment insofar as it referred to defendant's prior term of incarceration because when he testified he admitted to serving a prior prison sentence.
[3] R.C. 2903.01.
[4] R.C. 2923.13, in part, provides that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance," if that person has previously been convicted of an offense "involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." In this case, defendant admits that he has a prior conviction for drug law violation.