JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Mikhail Kleyman, brings this appeal challenging his conviction for gross sexual imposition. After a review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On August 11, 2004, the Cuyahoga County Grand Jury indicted appellant on one count of gross sexual imposition, in violation of R.C. 2705.05(A)(1), and one count of gross sexual imposition, in violation of R.C. 2705.05(A)(5). On November 11, 2004, as part of a plea agreement, appellant pleaded guilty to Count two as amended to attempted gross sexual imposition. Count one was nolled. The trial court sentenced appellant to two years of community control sanctions.
 {¶ 3} On July 20, 2005, appellant moved to withdraw his guilty plea. After a hearing on the motion, the trial court granted appellant's motion. On October 10, 2007, a jury trial commenced. The state presented evidence from several witnesses, including eyewitnesses Kellie Landau and James Sotak.
 {¶ 4} According to the record, on the afternoon of July 2, 2004, appellant, then 68 years old, was at the community pool in Solon, Ohio. Appellant is from the Ukraine, and his native language is Russian.[1]
On that same afternoon, the victim, a 13-year-old female with mental and physical disabilities, was also at the community pool accompanied by her care giver, Kellie Landau. *Page 4 
 {¶ 5} Ms. Landau testified that she had been the victim's care giver for seven years. She testified that, at first sight, the victim does not appear to have any mental or physical disabilities, but anyone who spends even a short amount of time with her will immediately become aware that the victim is unable to communicate verbally. She testified that the victim's affliction is known as apraxia and affects her ability to speak, but does not affect her ability to comprehend what she is being told. Ms. Landau further testified that the victim responds with certain hand signals or with grunts and groans.
 {¶ 6} James Sotak testified that he was a lifeguard at the community pool and that he was on duty on the afternoon of July 2, 2004. He testified that he recognized appellant as a patron at the pool that day. He also testified that on the day in question he observed the victim jumping off the diving board and swimming in his guard area in the late afternoon. Mr. Sotak testified that he did not notice that the victim had any physical impairments despite having observed her for 15 to 20 minutes on that day.
 {¶ 7} Both Ms. Landau and Mr. Sotak were eyewitnesses to the events that occurred between appellant and the victim. Both testified that they saw appellant sitting in a lounge chair that was facing away from the pool. They testified that appellant motioned to the victim to come over and sit beside him on his lounge chair. They saw the victim sit down for a few seconds and then return to the pool to swim for a few more minutes. *Page 5 
 {¶ 8} Ms. Landau and Mr. Sotak testified that appellant again motioned for the victim to sit down beside him by patting his chair. They saw the victim return to appellant's chair and sit down. Mr. Sotak testified he thought it was odd that appellant and the victim were sitting together because he did not think they had come to the pool together. He testified that he witnessed appellant hold the victim's hand in one of his hands while rubbing her arm and shoulder with his other hand. Ms. Landau testified that she witnessed appellant rub the victim's shoulder and arm, and then place his hand beneath the shoulder strap of her bathing suit top. She also testified that she witnessed appellant use his other hand to touch the victim's stomach underneath the fabric of her tankini top.[2]
 {¶ 9} Ms. Landau testified that she ran over to appellant's chair and yelled at him, "Do you know her?" then grabbed the victim by the arm and led her quickly away from appellant. Ms. Landau also testified that she thought appellant had an erection because she noticed a bulge in his bathing suit. She testified that the victim starting hitting her, a sign she believed meant that the victim thought she herself had done something wrong. Mr. Sotak testified that he ran to Ms. Landau's assistance. Appellant was arrested that afternoon at the pool. *Page 6 
 {¶ 10} When questioned about the victim's ability to assess social relationships, Ms. Landau testified that the victim is "very low functioning" and that, although the victim is very social, she is "socially inappropriate because she doesn't know how to act appropriately due to her disability." Ms. Landau gave the example that, if the victim notices a common feature between a friend and a stranger, such as both their names begin with the same sound, the victim might automatically assume the stranger was "okay" to interact with based on the similarity. Furthermore, when Ms. Landau was asked if the victim has the ability to discern appropriate touching from inappropriate touching, she answered, "She [the victim] has no concept of it," and that the victim would not have understood that inappropriate touching was wrong.
 {¶ 11} The state presented the victim's mother and another lifeguard, Lindsey Reynolds-May, to testify about the victim's disabilities. Both witnesses testified that the victim was unable to communicate with speech and that any person attempting to communicate with the victim would immediately recognize that the victim could not speak. The victim's mother testified about the conditions that limit her daughter's ability to communicate with others. She testified that her daughter cannot communicate her thoughts with expressive language. She also testified that her daughter has trouble understanding whether certain social relationships are appropriate. The victims's mother testified that, to a stranger, her daughter may appear physically normal because *Page 7 
her gross motor skills are not significantly impaired; however, upon closer inspection, the victim walks with an odd gait, and she is somewhat slouched in her posture.
 {¶ 12} The victim was not a witness in the case. There was some discussion between counsel and the court as to whether the victim was competent to testify. The court ruled, without a hearing, that the victim was incompetent to testify. This decision was based on the uncontroverted testimony of Ms. Landau, the victim's mother, and Ms. Reynolds-May, that the victim's disabilities left her unable to speak.
 {¶ 13} At the close of the state's case, appellant made a Crim. R. 29 motion for acquittal, which the court denied. The defense did not present a case. The trial court denied the state's request for a jury instruction on the lesser-included offense of sexual imposition. On October 12, 2007, the jury returned verdicts of guilty on Count two and not guilty on Count one. On November 27, 2007, appellant was sentenced to three years of community control sanctions.
 Review and Analysis {¶ 14} Appellant raises six assignments of error on appeal. His first two assigned errors require the same legal analysis so we address them together.
 {¶ 15} "I. The trial court erred in denying defendant's motion for acquittal under Crim. R. 29."
 {¶ 16} "II. Defendant's conviction is not supported by sufficient evidence." *Page 8 
 {¶ 17} In the first and second assignments of error, appellant challenges the sufficiency of the evidence the state produced on the charge of gross sexual imposition under R.C. 2907.05(A)(5). Appellant argues there was no evidence that his contact was sexual; even if his contact with the victim was sexual, there was no testimony presented that her ability to resist or consent to such contact was substantially impaired; and, there was no evidence that appellant knew or had reason to believe that the victim's ability to resist or consent was substantially impaired.
 {¶ 18} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 19} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus. *Page 9 
 {¶ 20} More recently, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 21} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v.Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652,663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." Id. at 386-387.
 {¶ 22} We note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v.Lamko, Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. *Page 10 
 {¶ 23} Appellant was found guilty of gross sexual imposition, in violation of R.C. 2907.05(A)(5), a fourth degree felony.[3]
R.C. 2907.05 states in relevant part: "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: *** (5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 24} There are three elements of the offense at issue: 1) that the offender had sexual contact with another not his spouse; 2) that the victim has a mental or physical condition that substantially impairs her ability to resist or consent; and 3) that the offender knew or had reason to know his victim's ability to resist or consent was substantially impaired. Appellant argues that the state failed to present sufficient evidence of any of these elements. We disagree. *Page 11 
 {¶ 25} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." In this case, the testimony reveals that appellant touched the victim's shoulder, arm, and stomach beneath the fabric of her bathing suit with his hand. In addition, there was testimony from Ms. Landau that appellant appeared to have an erection.[4]
 {¶ 26} In State v. Ackley, 120 Ohio Misc.2d 60, 2002-Ohio-6002,778 N.E.2d 676, the court stated that the definition of "sexual contact" requires proof beyond a reasonable doubt by the state "that the part of the body being touched is, in fact, an erogenous zone of the victim, and that the purpose of the touching was to sexually arouse or gratify either the offender or the victim. *** The body parts listed in the statute — the thigh, genitals, buttock, pubic region, or if the person is a female, a breast — are per se erogenous zones, and the state is relieved of the obligation to prove that those listed body parts are, in fact, erogenous zones; but the state still bears the burden of proving beyond a reasonable doubt that those body parts were, in fact, touched by the defendant."
 {¶ 27} The Ackley court further stated that it "considers prosecution viable only for instances where the offender is accused of touching an erogenous zone of *Page 12 
the victim for the purpose of sexual arousal or gratification of either person." Id. "[T]he sexual contact statute does not, by its terms, proscribe the touching of any part of the body of another, but rather proscribes the touching of any part of the body of another that is an erogenous zone; that is, any part of the body of another, which the mind of the offender or victim or a reasonable person would perceive as sexually arousing or gratifying to either the offender or the victim, for the purpose of sexual arousal or gratification of either the offender or the victim." Id.
 {¶ 28} The testimony at trial was that appellant used his hand to rub the victim's arm, shoulder, and stomach, all of which fall outside the category of per se erogenous zones. So we must consider whether the state has presented sufficient evidence that appellant, the victim, or a reasonable person would perceive the touching as done for the purpose of sexual arousal or gratification.
 {¶ 29} There is no evidence of how the victim perceived the touching. There is also no evidence of how a reasonable person would perceive it. There is some evidence from Ms. Landau that appellant was sexually aroused when he was rubbing the victim. We find that there is sufficient evidence of sexual contact.
 {¶ 30} On the second element of gross sexual imposition, we find that the state presented sufficient evidence that the victim's ability to resist or consent was substantially impaired. *Page 13 
 {¶ 31} "Substantial impairment" is established by demonstrating a present reduction, diminution, or decrease in the ability to either appraise the nature of or control one's conduct. State v. Zeh (1987),31 Ohio St.3d 99, 509 N.E.2d 414; see, also, State v. Novak, Lake App. No. 2003-L-077, 2005-Ohio-563. Furthermore, substantial impairment "can be shown to exist by the testimony of people who have interacted with the victim and by allowing the trier of fact to do its own assessment of the person's ability to appraise or control his or her conduct." State v.Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453.
 {¶ 32} The state presented lay testimony from the victim's mother and Ms. Landau that the victim suffered from multiple developmental disorders, and specifically from apraxia, the inability to communicate through oral speech. Furthermore, and perhaps most importantly, Ms. Landau and the victim's mother testified that, because of the victim's developmental disabilities, the victim was unable to assess socially appropriate behavior. Specifically, Ms. Landau testified that the victim draws erroneous connections between friends and strangers based on nothing more than a minor similarity between two people. Evidence of the victim's inability to accurately assess appropriate social relationships and appropriate physical contact could lead a jury to believe that the victim's ability to resist or consent to sexual contact was substantially impaired. *Page 14 
 {¶ 33} We find that the state presented sufficient evidence to prove beyond a reasonable doubt that the victim's ability to resist or consent was substantially impaired, as required under R.C. 2907.05(A)(5). We also find that the state produced sufficient evidence that appellant knew or had reason to know of this fact.
 {¶ 34} At trial, several of the state's witnesses testified that anyone who had even a brief interaction with the victim would know immediately that she was unable to communicate orally. Ms. Landau and Mr. Sotak testified that they witnessed the victim sitting with appellant two different times on the afternoon of July 2, 2004. Ms. Landau testified that the victim has no concept of what kinds of physical touching are appropriate or that inappropriate touching is wrong. Even if appellant did not know or have reason to know if the victim could distinguish between appropriate and inappropriate touching, we find there was sufficient evidence that appellant knew or should have known the victim could not have communicated her consent to how he was touching her or had the ability to resist him.
 {¶ 35} Having reviewed the evidence in the light most favorable to the prosecution, we find that the state presented sufficient evidence to prove beyond a reasonable doubt that appellant is guilty of gross sexual imposition, in violation of R.C. 2907.05(A)(5).
 {¶ 36} Appellant's first and second assignments of error are overruled. *Page 15 
 {¶ 37} "III. Defendant's conviction for gross sexual imposition is against the manifest weight of the evidence in violation of Article IV, Section 3, of the Ohio Constitution."
 {¶ 38} In his third assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence. We find his argument without merit.
 {¶ 39} The court in State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 40} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *** SeeTibbs v. Florida (1982), 457 U.S. 31, 38, 42." State v. Martin, supra, at 175. Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with *Page 16 
caution and in only the rare case in which the evidence weighs heavily against the conviction. Martin, supra.
 {¶ 41} There is no evidence from the transcript that the jury lost its way in convicting appellant of gross sexual imposition. There was evidence that appellant had sexual contact with the victim because he became aroused. There was evidence that the victim's developmental disabilities prevented her from accurately assessing social relationships and from communicating with others and that the victim's inability to communicate substantially impaired her ability to resist or consent to others' behavior. There was also evidence that appellant knew or should have known from the victim's obvious inability to communicate that her ability to consent to or resist his sexual contact with her was substantially impaired. We do not find there has been a manifest miscarriage of justice in the guilty verdict reached by the jury. Appellant's third assignment of error is overruled.
 {¶ 42} "IV. The trial court erred and abused its discretion in admitting prejudicial hearsay, witness' opinion, character evidence, and in finding the alleged victim incompetent for purposes of trial and in its prejudicial instructions to the jury during voir dire, thereby depriving defendant of a fair trial." *Page 17 
 {¶ 43} In his fourth assignment of error, appellant argues that there were several instances during trial when the court erred to his prejudice. We consider separately each allegation of error.
 {¶ 44} Appellant argues that the victim's mother's testimony was hearsay because she recounted what occurred at the pool even though she was not present that day. He also argues that Ms. Landau's testimony regarding what the victim thought was inadmissible hearsay.
 {¶ 45} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Hearsay is generally inadmissible. Evid. R. 802.
 {¶ 46} The decision whether to admit hearsay statements is within the discretion of the trial court. See State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus (the admission of relevant evidence rests within the sound discretion of the trial court). To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 47} Ohio courts have held that the erroneous admission of a hearsay statement is harmless where another individual testified to the same events at trial. State v. Gough, 5th App. No. 2004CA00022,2004-Ohio-4550; State v. *Page 18 Tucker, Cuyahoga App. No. 83419, 2004-Ohio-5380. Harmless error is defined as, "any error, defect, irregularity, or variance which does not affect substantial rights[.]" Crim. R. 52(A) provides that any error that is harmless shall be disregarded. In Gough, supra, the court held that any potential error in the trial court's admission of a victim's statement to a police officer was harmless where the victim testified to the same events. Id. at 3.
 {¶ 48} The victim's mother testified to the same events that both Ms. Landau and Mr. Sotak testified to. Appellant has not proven, however, that the testimony led the jury to convict him. We therefore hold that, even if the trial court abused its discretion by admitting the mother's testimony on the events that occurred at the pool, any error was harmless. There was sufficient evidence from the other witnesses on which the jury could convict appellant.
 {¶ 49} Next, appellant argues that the trial court erred in allowing Ms. Landau to testify as to what the victim communicated to her after the incident because the testimony was inadmissible hearsay. Appellant does not offer any reason to explain how the testimony was highly prejudicial beyond the mere assertion that it is. Although we agree this testimony was inadmissible hearsay, we hold that any error was harmless.
 {¶ 50} Appellant argues that the testimony of the victim's mother that the victim is prone to visiting with strangers and Ms. Landau's testimony that the victim had never seen appellant before were speculation. Again, we find that *Page 19 
even if the testimony was inadmissible under Evid. R. 403(A), [5] any error was harmless, and there was sufficient other evidence presented upon which the jury could convict. See State v. Bell, Fairfield App. No. 05-CA-67, 2006-Ohio-6560.
 {¶ 51} Appellant argues that the trial court erred by allowing Ms. Reynolds-May to testify about other acts by appellant, and this testimony prejudiced the jury. He points specifically to her testimony that appellant looked at female lifeguards "in a very uncomfortable way."
 {¶ 52} Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 53} We find that the trial court did not abuse its discretion by allowing Ms. Reynolds-May to testify about appellant's prior behavior. The testimony was elicited to show Ms. Reynolds-May knew appellant from her previous interaction with him at the pool. She did not testify that appellant's actions on July 2, 2004 were in conformity with his behavior on a prior day. Any alleged error by the trial court in admitting this testimony was harmless and did not prejudice appellant. *Page 20 
 {¶ 54} Appellant argues that the trial court erred by declaring the victim incompetent for purposes of trial. We disagree. In this case, the state tried to call the victim as a witness, and appellant objected. Under the doctrine of invited error, [6] appellant cannot now complain.
 {¶ 55} Finally, appellant argues that the trial court erred by stating that the "grand jury found that appellant committed gross sexual imposition." He argues that the judge demonstrated bias, which prejudiced the jury. In fact, the transcript is replete with occasions on which the court stated that the Grand jury's indictment is not evidence in the case and that appellant is innocent until proven guilty. We do not find that the trial court demonstrated bias.
 {¶ 56} Based on the above analysis, we find no error by the trial court; therefore, we overrule appellant's fourth assignment of error.
 {¶ 57} "V. Defendant was denied his constitutional right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments of the United State Constitution and Article I, Section X of the Ohio Constitution."
 {¶ 58} In his fifth assignment of error, appellant argues that he was denied effective assistance of counsel for several reasons, including his counsel's failure to request certain boilerplate jury instructions; failure to object to hearsay *Page 21 
evidence; failure to request jury instructions on lesser included offenses; and, failure to request a competency evaluation.[7]
 {¶ 59} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 60} In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 61} Appellant argues that his trial counsel was ineffective for failing to object when the court neglected to give jury instructions on stricken evidence and appellant's right not to testify. We note that appellant's trial counsel failed to object to any perceived error in the trial court's jury charge. Failure to object to a jury instruction waives any claim of error relative to that instruction, unless, but for the error, the outcome of the trial clearly would have been otherwise.State v. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332; State v.Nolling, *Page 22 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88. It is well established that, absent plain error, an appellate court will not consider errors to which the defendant failed to object at the trial level. State v.Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364.
 {¶ 62} It is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R.C. 2945.11. Correct and pertinent requests to charge the jury must be given by the trial judge, either as specifically proposed or within the substance of a general charge. State v. Perryman (1976),49 Ohio St.2d 14, 358 N.E.2d 1040.
 {¶ 63} A defective jury instruction does not rise to the level of plain error unless it can be shown the outcome of the trial would clearly have been different but for the alleged error. State v.Campbell, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339; Cleveland v.Buckley (1990), 67 Ohio App.3d 799, 588 N.E.2d 912. In addition, the plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances in order to prevent a manifest miscarriage of justice. State v. Cooperrider (1983), 4 Ohio St.3d 226,448 N.E.2d 452. Moreover, a single challenged jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. See State v. Hardy (1971),28 Ohio St.2d 89, 276 N.E.2d 247.
 {¶ 64} Appellant never explains how the outcome of his trial would have been different if those jury instructions had been given, but asserts that the jury relied on stricken testimony. Appellant states no basis for this assertion. We do *Page 23 
not find that the trial court's failure to give the two instructions appellant now seeks rises to the level of plain error, especially within the context of the entire jury charge.
 {¶ 65} Appellant also argues that his trial counsel was ineffective for failing to object to improperly admitted hearsay evidence. Having determined that the testimony complained of did not rise to the level of prejudicial error, we find the same here. There is no evidence that the testimony would have affected the outcome of the trial; therefore, trial counsel was not ineffective for not objecting to its admission.
 {¶ 66} Appellant argues that his trial counsel should have requested an independent medical examination ("IME") of the victim. Appellant also argues his counsel should have requested a jury instruction on the lesser-included offenses of disorderly conduct and/or sexual imposition. We disagree that trial counsel's failure to make these requests falls to the level of ineffective assistance.
 {¶ 67} Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight.Strickland, supra; State v. Cook (1992), 65 Ohio St.3d 516, 524-525,605 N.E.2d 70. A decision by trial counsel not to call an expert witness generally will not sustain a claim of ineffective assistance of counsel.State v. Coleman (1989), 45 Ohio St.3d 298, 307-308, 544 N.E.2d 622;State v. Thompson (1987), 33 Ohio St.3d 1, 514 N.E.2d 407. *Page 24 
 {¶ 68} Likewise, the failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 402 N.E.2d 1189; State v. Griffie, 74 Ohio St.3d 332,1996-Ohio-71, 658 N.E.2d 764. We find that trial counsel's decisions not to obtain an IME or request instructions on lesser-included offenses were strategic ones and do not sustain appellant's claim here.[8]
 {¶ 69} For the foregoing reasons, we overrule appellant's fifth assignment of error.
 {¶ 70} "VI. The totality of the aforementioned errors by the trial court and by defense trial counsel and their cumulative prejudicial effect deprived defendant of his constitutional right to due process of law and a fair trial."
 {¶ 71} As the Ohio Supreme Court held in State v. Madrigal,87 Ohio St.3d 378, 398, 2000-Ohio-448, 721 N.E.2d 52: "In order to even consider whether `cumulative' error is present, [the court] would first have to find that multiple errors were committed in [the] case." The Ohio Supreme Court is clear in its holding that, in order to find cumulative errors, there must first be a showing that errors in fact occurred. Id.
 {¶ 72} We have not found that multiple errors occurred at trial; therefore, we overrule appellant's sixth assignment of error. *Page 25 
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., and MARY JANE BOYLE, J., CONCUR
[1] Appellant requires the use of an interpreter because his ability to communicate in English is limited.
[2] A tankini is a two-piece bathing suit in which the top extends to cover the wearer's midsection, like a tank top.
[3] On a fourth degree felony, the trial court may impose a sentence of between six and eighteen months, as well as a fine of not more than $5,000.
[4] On cross-examination, Ms. Landau admitted that she could not recall whether appellant had an erection and that she only noticed a "bulge" in his bathing suit.
[5] Evid. R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
[6] The doctrine of "invited error" prohibits a party from raising an error on appeal that she herself invited or induced the trial court to make. State ex rel. Fowler v. Smith, 68 Ohio St.3d 357, 359,1994-Ohio-302, 626 N.E.2d 950; Center Ridge Ganley, Inc. v. Stinn
(1987), 31 Ohio St.3d 310, 313, 511 N.E.2d 106.
[7] Appellant cites to a sixth reason, counsel's failure to request a mistrial, but he does not argue that point in his brief so we do not address it here.
[8] It should be noted that defense counsel objected to the state's request for a jury instruction on the lesser-included offense of sexual imposition. *Page 1